All rise. The judges of the United States Court of Appeals. Hear ye, hear ye. The United States Court of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court draw near, give attention, and you shall be heard. God save the United States and this honorable court. Please be seated. Good afternoon. Would the clerk call the case, please? Case 19-5427, William Rogers v. Tony Mays. Argument not to exceed 30 minutes per side. Ms. Henry, you may proceed for the appellate. Good afternoon. May it please the court. My name is Kelly Henry, and it is my honor and privilege, along with my co-counsel, Ashley Thompson, to present argument on behalf of the petitioner, William Glenn Rogers, in this case. I would like to reserve five minutes for rebuttal. Right. Thank you, Your Honor. Your Honor, before I get into the substance of my argument, I would like to make a few preparatory comments that I would not normally make. But in a case such as this, as complicated as it is, there are two things that I would like to make sure and be clear about as an attorney making my record. I understand to be bound by the contours of the court order granting the statistical appealability. And because of that, my argument will be largely dealing with issues of perspective sentencing. But I do want to be very clear that Mr. Rogers does not in any way allege or waive a claim of innocence. Mr. Rogers has continued to maintain his innocence 100% in this case, and nothing I say today should be viewed as conceding guilt on any issue should this case be remanded to the district court for further proceedings. Second, in reviewing our brief, I just want to take a moment to say there's nothing in our brief or in the position of the petitioner that should be read as lacking in empathy for the victim's brother, Jeremy Beard. In fact, there's enormous empathy for Jeremy Beard. Jeremy Beard's life and childhood mitigation mirrors that of my defendant, Mr. Rogers. In fact, there are many parallels between the victim's mother, Jeannie Myers, and my client's mother, Cynthia Knicksayer. And that's not to say that we don't have empathy for the victim's family. We do. This is a difficult case. The facts that we have to deal with in this case are difficult on both sides. When we look at the childhood mitigation of Mr. Rogers, we can see parallels in what happened to Mr. Jeremy Beard. And so to the extent that the brief could in any way be viewed as lacking in empathy or sympathy for the victim's family, I want to take responsibility and acknowledge that and say that we have enormous empathy for Jeremy Beard. I think it would be most important to focus our comments today. There's extensive briefing in this case, and of course I'm willing to answer any questions the court has. But it seems to me that it's most useful to spend our time this afternoon looking at the ineffective assistance of counsel with respect to mitigation claims. There, we allege that the district court erred in finding that this case is adjudicated on the merits in state court and that the limitations of relief found in 28 U.S.C. 2254D apply. Simply put, the claim raised in federal habeas bears no resemblance to those claims raised in state court. The state alleges that, in fact, the allegations in our federal habeas claim found at paragraphs B20-24 and B2-5 are the same as those claims raised in state court. And thus, Harrison v. Richter and Penholster basically control this court's review. Counsel, can you speak up a little? I'm losing the end of yours. I apologize. Thank you. My husband has never accused me of being a quiet talker. I will try to be louder. Essentially, Your Honors, it boils down to this. If this panel finds that the ineffective assistance of counsel with respect to mitigation claims raised in the federal habeas petition is different from the claims raised in state court, frankly, your analysis can end there, and you should remand the case to the district court for a detailed analysis of the totality of the circumstances in this case. I'm sorry. Are we talking about mitigation now, or are we talking about ineffective assistance? I mean, are we talking about ineffective assistance in mitigation or in the semen evidence? Your Honor, at this point, I'm sorry, I should have highlighted I'm pivoting to the IAC mitigation evidence, although I'm happy to talk about IAC with respect to the semen evidence because that is substantial. No, that's fine. Okay. And if time remains, I would like to go back to that issue as well. But with respect to, when I say back to the issue, I would love to go back and revisit the issue of ineffective assistance with respect to the serology evidence, both that which was presented on the merits of state court, as well as that separate claim, which was a defaulted claim raised for the first time in federal habeas. That certainly has everything to do with my comments about Mr. Jeremy Mears. But with respect to ineffective assistance of counsel at penalty base, with respect to the mitigation evidence, the evidence that we presented in federal habeas differs in substance and subject matter and substantiality from that which was presented in state court. What we have here is evidence, most importantly, of brain damage. There is no allegation from the state and no finding that there was any strategic decision on behalf of trial counsel to ignore red flags of brain damage in this case. In fact, the overwhelming evidence establishes that trial counsel was on notice of Mr. Rogers' multiple brain injuries. Trial counsel was on notice from their mitigation investigator and other experts, including resource counsel, that they needed to have a full neurological workup done on their client, including brain scans. Now this is important because the only expert who conducted any sort of cursory review for brain damage was an inexperienced clinical psychologist who failed to conduct important information. He didn't fail to, he wasn't qualified to. He wasn't a neuropsychologist and he was not a neurologist. So they didn't have anyone on their team capable of conducting an analysis of brain damage. Why is this important? It's important because the U.S. Supreme Court, in its cases, has acknowledged that evidence of brain damage is essentially a super mitigator. You can't fake a brain scan. You cannot malinger a PET scan. That's objective data that the jury can look to and consider when they put into context Mr. Rogers' behavior and what happened in the case and whether or not they feel he has full moral culpability for the crime of which they have convicted him. Supported by the facts that are already in the record concerning his childhood and his abusive stepfather. So you've got the facts in the record and you just say at mitigation they completely failed to take those facts and use them in a way that would show what the Supreme Court refers to as organic brain damage. Absolutely, Your Honor. What we have presented in federal habeas with respect to our experts in complex trauma is we have been able to use a multidisciplinary team of mental health professionals to show, to draw the direct line between both the genetic history of Mr. Rogers on both the paternal and maternal side. And also be able to explain what happened to Mr. Rogers' brain while he developed. We know and it was known. How do you thread the needle to be able to get there? I mean, how can you get there to get the remand to look at that mitigation evidence? I believe the way we get there, Your Honor, is simply for this court to first find that the claim as presented in federal habeas is a new claim, a new defaulted claim. Once the court makes that finding, then it would be appropriate to remand to the district court for the district court to conduct the sort of analysis that I'm discussing here. Because the district court did not engage in that analysis. And I think this court's opinion, as well as most recently the U.S. Supreme Court's decision in Andrews, A-N-D-R-U-S, talk about how the inquiry into prejudice of a substantial ineffective assistance of counsel claim is incredibly fact-intensive and would be most appropriately done at the lower court level. Here, Judge Crenshaw misapprehended the nature of our claim and basically dealt with it in one page of his memorandum of opinion and said this was not a new claim. And therefore, Cullen v. Penholster prevented him from being able to consider all of our evidence. And we're talking a mountain of evidence that was presented and never considered in the state court. So what case should we rely on in saying this is a new claim and that we can consider the evidence, the new evidence? Your Honor, I think that we can start with Martinez. But you could also look at, for example, I think one of the best cases that you could look at, frankly, is Cullen v. Penholster and the interplay between the conversation of Justice Alito and Justice Sotomayor when they talked about what Cullen v. Penholster applies to and what it doesn't. And what Justice Alito said about Justice Sotomayor's criticism of the court's opinion in Cullen v. Penholster is that what Justice Sotomayor was positing was a new claim. And both of them were Brady claims. Both of them attached to them a name. But the claim isn't just the case upon which it relies. It is the facts that support that claim. And what Justice Alito said was if you have facts that are so new and different, you may well have a new claim. And that claim will, in and of itself, be a defaulted claim subject to different analysis in which Cullen v. Penholster would not apply. I think you can also look, Your Honor, instructively at the decisions from the Ninth Circuit in Lopez v. Stewart as well as the Dixon case. Sir, what was the first one? Lopez v. Stewart. I happen to represent Samuel Lopez, so that's the case that comes off the top of my head first. In that case, the court distinguished the difference between ineffective assistance of counsel with respect to mitigation testimony versus straight-up lay mitigation testimony from lay persons versus ineffective assistance of counsel with respect to expert testimony. So courts across the country recognize that ineffective assistance of counsel claims come in different buckets. The bucket we have in federal court, there's no resemblance to that which was raised in state court and would have changed at least the opinions of one juror, which is all that is required. I'm sorry, I don't have to prove it. It would have been probably, reasonably probable, that at least one juror would have voted for life if they had heard the entirety of the mitigation testimony. Particularly, I would focus us on the brain image evidence, which was not developed or presented to any court until federal habeas. In fact, the first neurological and neuropsychological workup done was in federal habeas and presented to the court in summary judgment, but not considered simply because of Neuronia's ruling with respect to Cohen v. Mulder. My colleague argues the opposite. My colleague will argue that the claim raised in state court was, in fact, the same claim. We respectfully disagree and suggest that that is championing formalism over justice. But wasn't there substantial evidence presented at the state court about the terrible childhood and the very unfortunate circumstances of your client's life? Your Honor, there was testimony presented in the penalty phase to my client's brother, Sam Rogers. And I will refer to Sam Rogers as my client's brother because that's his gender identity. In the transcript, he is referred to as Mildred and as Mr. Rogers' sister. By the time of the penalty phase, he had transitioned and is now Sam Rogers, and that's how I will refer to him. And Sam Rogers did testify. Unfortunately, the defense counsel pinned the entire mitigation case on the credibility of Sam. Sam dissociated in front of them during pretrial preparation. She was herself, or he was himself, incredibly damaged as a result of their childhood and put his credibility at issue. And the state took advantage of this. And in fact, the closing argument talks about how everything has to do with Mildred, Mildred, Mildred. That's fine about Mildred, the state says, but what about this defendant, Mr. Rogers? And even questioned whether or not any of the testimony was true, looking at both my client's mother and her testimony against her own son, as well as calling ex-wives to say, well, Mr. Rogers never told them that he had been abused. So that permitted the jury to discount the evidence that was presented. But the evidence presented through Sam Rogers was only a tip of the iceberg. The other evidence presented in mitigation at trial was actually hurtful to the client. We know that they called the principal from the school, right? But the principal from the school wasn't able to testify that Mr. Rogers had been abused. She said he was a discipline problem and he bit other children and his nickname was Wolfie. Well, that just made him look like an antisocial, conduct disorder criminal in the eyes of the jury because they couldn't understand that Wolfie was the result of being chained to the bed. Wolfie was the result of torture, not just abuse, not just trauma, torture. They didn't get that context. So what they heard was somebody who was a discipline problem. That's not particularly mitigating. What they heard was a tale of this odd guy without any— So would you say that this is similar to Wiggins, then? Yes, Your Honor. This is absolutely similar to Wiggins as well as from Phillips, where the jury got just a flavor of the mitigation, but it was, in fact, a false narrative of who my client really is and what he's actually experienced growing up. And that sort of information is powerful mitigating evidence. The U.S. Supreme Court, even post-EDSA, even post-EDSA, has not hesitated to grant relief in an ineffective assistance of counsel case with respect to penalty when you're talking about mitigation evidence of this strength that was not presented in state court. And, Your Honor, you bring up a good point with respect to what was presented in the penalty phase because I think it's important to look at the fact that because there was so little in terms of quality of information presented to the jury in terms of credible evidence, you had the state expert being able to belittle that evidence and refer to what happened to Mr. Rogers growing up as having a, quote, rough time. A rough time is not what happened here. A rough time may be a child being thanked when they shouldn't be thanked or something a little difficult, maybe some poverty. This is a man who ate cat food. This is a man who would be denied food because his father wasn't providing child support. This is a man whose stepfather buried him in the ground and drove a lawnmower around him as if he was maniacally torturing him as if he was about to kill him. This is a man who, in his 20s, had learned helplessness so much that he would allow himself to be chained to the bed for so long that he would have to defecate. This is not somebody who had a rough time. This is somebody who, as a result of sustained, pervasive, massive torture, as well as multiple head injuries, has a brain that we know from Dr. Gerr's MRI scan and the PET scan doesn't work. His brain scans, if you look at the data in the record, not only the excerpts from the brief, but if you go back and look in the record in the report from Dr. Gerr, you see that the PET scan shows abnormalities in 15 different areas of the brain, importantly in the frontal lobe. Mr. Rogers simply does not have the ability to control his behavior, his impulses, and to act in a normal way. But also you have the testimony of Dr. Bethany Brand in the record here. Dr. Bethany Brand, who is one of the foremost experts on trauma and torture in this country, who testified to a reasonable degree of certainty, and it is presumed true because it is not challenged on appeal, Mr. Rogers' torture scale, the ACE scale, puts him at 99.9%. He has 99.9% more trauma than anyone else in the country. That's where his percentile puts him. That's massive trauma. That's the sort of thing that a jury can listen to and find mitigation, can find empathy for a defendant, even if they've convicted them of a crime such as this. And it is, Your Honor, a false narrative to suggest that we can somehow set aside this mitigation evidence simply because there are four aggravators or because of the nature of the crime. It's a false narrative because we see the cases that are involved in the U.S. Supreme Court where they've granted relief. All homicide is horrible. All death is horrible. That's not the standard. That's not the U.S. Supreme Court standard. What we have to have is an individualized sentencing determination considering all of the factors. And at this stage, what we need to know, because we're at a Martinez substantiality stage, is whether or not there's a reasonable probability that at least one juror would have voted for life. What is not in dispute with respect to this ineffective assistance of counsel claim, Your Honor, is sufficient performance either on behalf of the post-conviction attorney or trial counsel. The state's brief does not attempt to argue that the post-conviction counsel was in any way, shape, or form effective with respect to the ineffective assistance of counsel in mitigation. And, in fact, the record shows that they were not. There was no reasoned decision to forego the kind of investigation that is required. And I should point out, Your Honor, we do cite the ADA guidelines in our brief, and I am aware that the U.S. Supreme Court in Vancouver has said that the ADA guidelines are not inexorable rules. However, when it comes to Tennessee, it is important to note that in 1976, Ambassador v. Rose, the Tennessee Supreme Court said the ADA guidelines set the professional norms for defense attorneys in Tennessee. So the ADA guidelines are particularly instructive when the court is looking at deficient performance on behalf of counsel, both post-conviction and trial, because Tennessee law is, we have to abide by those rules. I'm sorry to take you back to the beginning when you were criticizing the district court for addressing the mitigation argument in one page. The district court's analysis was that Martinez doesn't provide an opportunity to present this new evidence because the claims were raised and addressed on the merits in state court. So how do you get around that conclusion? Your Honor, it is simply incorrect. There were 33 words written on a piece of paper called the Second Amendment Petitions Post-Conviction Relief that were not supported by proof and abandoned at the hearing. What we have established in our brief is that that was, in fact, a procedural default. And when we look at what is a claim presented in state court, I would suggest the court look at Leibman and Hurt. But we've been told not to look at the evidence, that if a claim is presented and it's presented poorly, you don't get to go back and introduce evidence and make it better. But the question, Your Honor, is what is the claim that was raised? And our argument is no claim was raised because the 33 words written on a piece of paper were not themselves a claim under state law or federal law. And in our brief, we set out all of the rules that are required for pleading a claim in state court. And I believe Your Honor is referencing the Hughley decision, and I would like to talk about the Hughley decision because I think it's important. The language that's used in Hughley discusses a properly pled claim that was pursued in good faith. We don't have a properly pled claim, and it was not pursued. And the state doesn't dispute that in their brief. The Tennessee court has rules with respect to how a claim is supposed to be pled. Those rules were not followed here. Under Tennessee law, that was a default. And this court in the Mitchell case recognized that even though in Mitchell there had been some language that could have been construed as a merits ruling, that in fact the claim was procedurally defaulted, and that was the decision of the court. And this court has to, under the principles of comedy and federalism, give deference to the way the state court sets up their rules. But more importantly, when we're looking at a federal habeas claim, Your Honor, that's what we're looking at. The federal claim. Was the federal claim raised? The federal claim was not raised. It was not presented. And it was not adjudicated. When you look at what it takes to adjudicate a claim, what does that involve? It involves an application of law to fact. The claim is in and of itself defined by the fact. And while I agree that the court cannot look at new facts if they are subsumed in that other claim, that other claim, you have to look at the facts that are pledged to decide what designs the contour of the claim. When you look, for example, at the post-conviction petition, where these 33 words that we're talking about are referenced, they're sandwiched between different issues with respect to guilt-innocent. There's a separate claim with respect to Caruso. And that claim, we did not get a certificate of appealability on. I would argue to you that the state court was really analyzing those 33 words with respect to the Caruso claim, which the lower court decided was not unreasonable and not at issue here. But bare bones, words on a page that do not themselves raise a federal habeas claim, do not present a claim, and they are not properly pled. In Hughley, the attorney at issue properly pled a claim, and the petitioner in that case withdrew the claim. And the court found that it did so, that he did so competently. So Hughley really should be defined with facts, but we should also remember those words properly pled. The court uses properly pled in all sorts of litigation cases with respect to procedural defaults, because you can plead a claim in state court, but if you don't plead it properly, it's defaulted. We have that in numerous cases pre-edited. That's always been the law. I see that your orange light is coming on, and I did want to ask you a question about the evidentiary material on the rape area. And the concern that I have is even if we took your position that there was ineffective assistance of counsel in the semen evidence line, how does that impact the convictions for the premeditated murder and the felony murder in connection with the kidnapping, as opposed to the felony murder with respect to the rape? Your Honor, thank you for the question. And the answer is this. The state's theory at trial is that the kidnapping is related to the rape. Those two crimes are inextricably interwoven. And the premeditation conviction is also premised on the idea that there was a rape. If there was no rape, then the state's case completely falls apart, and you are left with my client's unreliable statement, which, by the way, doesn't match the fact that something is consistent with a false confession. But what we have here is a case that the state relied on heavily time and time again on there having to be evidence of a rape. And frankly, there wasn't. But why wasn't there evidence, arguably, of felony murder in connection with the kidnapping, even if you say there wasn't a rape, because the evidence was faulty on various grounds? Your Honor, I would argue that the reason, because this is a circumstantial case, the state needs the motive of rape in order to be a reason for Mr. Rogers to even kidnap the victim. The jury heard testimony that Mr. Rogers later recanted his alleged confession of kidnapping. They cannot place Mr. Rogers at the scene. They cannot place the victim in Mr. Rogers' car. Well, I thought there was testimony that there were child fingerprints on the windows of his car. Easily explainable by the granddaughter of one of Mr. Rogers' granddaughters, who had also been in his car. And that testimony, again, comes from a witness who was biased against Mr. Rogers looking for a divorce and even admitted for bias at the time of trial. All of that proof, Your Honor, even if it were... There's a difference between the Jackson standard, I guess I would say, and the prejudice standard. There's a difference between what? The Jackson versus Virginia standard, where we have to draw all inferences in favor of the state, versus prejudice, when we're looking at the totality of the evidence. The state case, as they argued it at trial, is based on a belief that Mr. Rogers raped Jackie Deer. And if that evidence is not substantial, then the state case falls away. The premeditation is premised on the idea that he didn't want to get caught for the rape. The kidnapping is premised on the idea that he wanted to rape the victim. If they didn't have the motive for the rape, then that takes away the motive for the kidnapping and it takes away the premeditation for first-degree murder. They have to have the rape in order to sustain all of those convictions. And I would further state, Your Honor, certainly as to penalty, where even the trial judge and the state have admitted that the evidence of rape was a close call, when you add to that the ineffective assistance in failing to investigate the source of the semen evidence, both through the serology testimony, as well as by failing to investigate Jeremy Deer, that is overwhelming prejudice. And with respect to ineffective assistance of counsel, we have to look at the totality of the trial counsel's errors in light of all the evidence. And so that is evidence that you can consider together when you're looking at whether or not Mr. Rogerson is entitled to penalty phase relief or a remand to the district court for further proceeding. I thank you, Your Honor, for allowing me the extra time and I look forward to seeing you move on. Thank you. May it please the court. Good afternoon. Davey Douglas on behalf of the respondent, Warden Tony Mays. We would ask this court to affirm the dismissal of the habeas petition, specifically because the district court properly concluded that the petitioner's mitigation claims were procedurally defaulted. These were claims that the petitioner clearly pled in state court and the post-conviction court was able to identify the claims, both by number. It identified both claims by number and then it issued a substantive ruling on the claims. It considered the proof that was presented at trial in mitigation and then it noted that there had not been any proof presented during the post-conviction proceedings and therefore concluded that the petitioner had failed to show that trial counsel was ineffective. This was not a procedural ruling, but it was a ruling on the merits that could have been appealed to the Tennessee Supreme Court and the petitioner procedurally defaulted that claim when he did not pursue it on appeal. And that's a conclusion that is supported by this court. Is there any evidence or discussion of brain damage? During the post-conviction proceedings? No, Your Honor. I do not believe that there was, but Sam Roger testified during the sentencing hearing that the petitioner suffered several serious head injuries that required hospitalization, but the issue was not brought up at the post-conviction hearing. So why wouldn't that give rise to an ineffective assistance of counsel claim that we can consider? Because, Your Honor, the default of this mitigation claim occurred on post-conviction appeal and this court... But if the brain injury was not presented at the post-conviction trial, isn't that ineffective assistance under Martinez and Trevino? It would not necessarily be ineffective assistance because counsel raised a claim that trial counsel failed to investigate and present available mitigating evidence. Brain damage would qualify as available mitigating evidence, and so the petitioner could have raised the issue on appeal. It was preserved for him to do that. And what this court has made clear is that when the default occurs on post-conviction appeal, that takes the claim beyond the reach of Martinez. That's a conclusion that this court has reached in West v. Carpenter and more recently in... But play it out. I mean, there's this sort of broad-based assertion about mitigation. There's absolutely no evidence presented or argument made with respect to brain damage. So what would there be on appeal? I mean, it's not like you gave up, your claim was rejected and you defaulted it on appeal. The claim wasn't considered because it wasn't presented. Yes, Your Honor, but I would submit that the claim as a whole, as a collective claim, was in fact considered on the merits. It's a similar scenario to a claim that trial counsel was ineffective for failing to call a witness, but that witness is not presented at the post-conviction hearing. That decision is appealable, and the Tennessee Court of Criminal Appeals and Supreme Court often will conclude that the petitioner cannot establish any prejudice because he did not present the witness. But the court does not find or conclude that the claim was procedurally defaulted based on the absence of proof. And that was, I think, something that this court spoke to in Hughley v. Mays when it pointed out that Martinez's concern was that a claim would not be raised at all. It was not concerned with a claim that might be raised, but simply underdeveloped. And that's what we have here. We have a claim that was raised, but underdeveloped, as the petitioner argues. But that is not sufficient to bring it within the reach of Martinez. Aren't there two different claims here? One being the claim that the mitigation evidence that was introduced at trial was not full and didn't capture the true mitigation circumstances, i.e., the deprived childhood, we'll call it. But the second mitigation argument would be the brain damage. And so there's one, as your opponent calls it, a 33-word statement in terms of the post-conviction trial court claims of the defendant there. What does the post-conviction trial court say? Was brain damage either in that 33-word post-conviction petition or in the trial court post-conviction opinion? I don't see it, but maybe it was there. Where was it? No, Your Honor, you're correct. The words brain damage were not in either the petition or in the post-conviction court's order. But what was in the petition was a broad claim of failing to present and investigate available mitigating evidence. And that would include, arguably, the brain damage that was available mitigating evidence. And the post-conviction court, again, clearly identified the claim and did not make any indication that it was improperly or deficiently pled. It was able to identify the claim and then issue a substantive merits ruling. So what I see in terms of the post-conviction trial court is a statement that trial counsel presented in the testimony of several mitigation witnesses, mentioning a couple of them, then says, no proposed mitigation evidence was presented during the evidentiary hearing. And then says, thus, the court can only speculate as to the nature of any proposed mitigation or that it would have helped the petitioner. Therefore, the court finds the petitioner has not established that counsel rendered ineffective assistance as to this issue. So if we want to conceivably segment the brain injury, I don't see anything where either it was presented by post-conviction trial counsel or where it was decided on the merits by the post-conviction trial court. Tell me where I'm wrong. Your Honor, I would point to the last sentence of the post-conviction court's order that this claim of ineffective assistance of counsel is without merit, I believe, was the post-conviction court's ruling. The question is, what is this claim? The claim is a failure to present all available mitigating evidence, investigate and present all available mitigating evidence, which, again, we would argue encompasses the brain damage. However, if the court is to look at the claims differently, then certainly brain damage would not be something that was in the post-conviction court's order. And this is an unreported denial of a COA, but this case is similar to the case of Oscar Smith where the petitioner tried to introduce new evidence in support of a claim that trial counsel was ineffective for failing to present mitigating evidence. And this court looked at it and concluded that that was a claim raised in the post-conviction proceeding and defaulted on appeal. And therefore, Martinez did not apply to allow the petitioner to present new evidence. We would submit that that is precisely what happened here. The petitioner raised a claim, a broad claim, that trial counsel was ineffective for failing to investigate and present available mitigating evidence. That encompassed mitigating evidence like brain damage, testimony from other lay witnesses about the petitioner's childhood. The post-conviction court identified the claim, adjudicated it on the merits, and the petitioner elected not to pursue the claim on appeal. And the fact that an appeal of the claim may not have been successful does not determine whether the claim was properly raised and adjudicated by the post-conviction court. So we would ask this court to find that Martinez does not apply to this claim. But we would also argue that if the court were determined, to determine that it does, that the petitioner cannot show that this claim is substantial. This was not a case where trial counsel failed to conduct a mitigating investigation or to present any mitigating proof. Trial counsel presented the often emotional testimony of Sam Roger. Several of petitioners and Sam's friends and family members who described the abuse that the petitioner suffered, the state of his childhood home. Hasn't the Supreme Court been developing over time this issue of organic brain damage as a conceptually distinct area of harm and mitigation? We understand that they've raised familial issues and even the abuse that played into that. But the Supreme Court, it seems to me, has understood that organic brain damage is a separate qualifier in itself. Your opposing counsel would argue it's because it is objectively provable as opposed to circumstantial presentation of a terrible life that is routine in mitigation. Why wouldn't that make it a new claim in light of the law that has come to govern organic brain damage? Your Honor, I would submit that it's similar to the reasons that the claim was actually raised in the broad nature of all available mitigating evidence. That would include the Supreme Court's, even though it's more recent, the focus on organic brain matter. And that would not render it a new claim. However, if the court is to determine that the issue with the brain damage is in fact a new claim and that Martinez could apply, the petitioner can still not demonstrate that the claim is substantial because some of the evidence trial counsel presented was from Dr. Tom Nielsen and Dr. Caruso who diagnosed the petitioner with several mental illnesses and they specifically connected those illnesses to his childhood trauma. And they explained how his childhood was extremely traumatic and that it affected his behavior. But the testimony of Dr. Caruso and Dr. Nielsen in this order says it was who testified regarding their psychological testing of the petitioner. Isn't psychological testing a distinct category from organic physical brain damage testing? Yes, Your Honor, it is. But the jury still had evidence before it that the petitioner's brain was impacted by his traumatic upbringing. His emotional state was impacted by the trials that he suffered as a child. But isn't it a distinct question as to whether physiologically his brain was damaged by the things that he suffered as a child? It would seem to me that it would be different because isn't that exactly where the Supreme Court is headed in its jurisprudence on organic brain damage? I would agree with you, Your Honor. There is a difference between a psychological evaluation and the brain scans. And there was not evidence of the brain scans before the jury. But, as I argued earlier, they heard evidence from Sam about the petitioner's serious car wrecks where he suffered head injuries that required him to be hospitalized. So, the jury was again aware that the petitioner could have suffered some damage. But isn't that quite different than finding out that actually there were brain scans that show that he has brain damage? Yes, Your Honor, it would be different. But again, what this court looks at is whether the new evidence differs in both strength and subject matter substantially from the proof presented at trial while also weighing the proof of the aggravating factors that was presented at trial. So, there was no evidence of the brain scans that we have now that was presented. But, that would not differ substantially in strength and subject matter from the mitigating case that was presented that the petitioner suffered a very, very traumatic childhood. So, he experienced horrific things, horrific abuse, and that it affected his behavior as an adult. That was the case that the jury had before it. And the jury also had the, I believe it was the Tennessee Court of Criminal Appeals that called it the overwhelming strength of the aggravating factors. Well, was one of the aggravating factors the rape? Yes, Your Honor, the aggravating factor was that the murder was committed in the attempt to perpetrate or the perpetration of any rape or kidnapping. So, the jury had both the rape and the kidnapping to consider when applying that enhancement. So, those could be distinct categories? They could. It could be either, yes, Your Honor, either the rape or the kidnapping. And the other factor involving both the rape and the kidnapping that the jury had to consider was that the murder was committed to conceal a crime from, or to avoid arrest or lawful prosecution. And... So, when the jury, clearly there were other mitigating factors. But when the jury is weighing whether to impose the death penalty, it would seem to me just instinctively that the rape of a nine-year-old would perhaps be the most important factor in making that decision. Like if we're... And this goes to the prejudice prong of the ineffective assistance. Your Honor, the rape of a nine-year-old child could indeed be a significant factor, but a permissible one for the jury to consider. There's also the kidnapping of a nine-year-old girl and her subsequent murder. So, even if the evidence of the rape is not considered, there's still proof that the defendant kidnapped this nine-year-old girl. How do you respond to counsel's argument that the whole... Look, I will give you that it is unlikely that that's what led to his conviction of the murder. But when you look at these individual offenses, her argument is that, well, all the aggravation is all premised on there having been a rape. That the premeditation is so that he could cover up for it, the kidnapping presumably so that he could take her someplace to do that, the premeditation, that it all sort of rests on the rape. How do you respond to that? By disagreeing that it rests all on the rape and by pointing out that, again, the evidence of the kidnapping is still there. And it's sort of a domino effect that does not knock all the dominoes down. A challenge to the sufficiency of the evidence for his rape conviction would not undermine the sufficiency of the evidence. I'm not talking about sufficiency. I'm talking about just the whole narrative, the rationale for it being premeditated for all these different offenses. What's your narrative that makes it premeditated, makes it kidnapping and all the rest without the rape? Your Honor, the evidence of that is the fact that the defendant, the petitioner introduced himself to the victim using a false name and asked to take her and her companion swimming. He then came back a couple days later after being in the land of the lakes park and noting to his wife that you could bury a body anywhere and no one would find it here. He came back with a seemingly false story about having lost a key, saw the victim, interacted with her and then left to go to a trailer where he was able to see the victim come outside alone. He didn't kidnap her. We've got the handprints that were in his wife's car showing that she was alive at the time. And then from there, based on the fact that she was driven 48 and a half miles away and that's where her body was found, the proof is that the defendant kidnapped her and then he killed her to cover up the kidnapping. And that is the same, that's the narrative I believe that is, sustains and shows the defendant's guilt in this case, even if this court is not considering the rape. And there were also, just going back though to the aggravating factors, there were two that did not involve the rape. And one was that the defendant was over the age of 18 and the victim was 12 years of age or younger. That was undisputed. And the other undisputed factor was that the defendant had a prior conviction whose elements involved the use of violence against the person. So could the jury have been really relying on a combination of all four factors and having the four factors together causing it to recommend the death penalty? It could have, yes, Your Honor. So how, if that were the case then, how would we be able to sustain the death penalty if we had problems with respect to the rape charge? Again, Your Honor, it would be the fact that the conviction, excuse me, the kidnapping is still motive and still reason for the crime of murder that the petitioner committed. And there's plenty of evidence of his motive to kidnap the victim as well. So even if there are issues. Why would he kidnap the victim apart from wanting to rape her? Your Honor, that would go more towards the defendant's motive which is not an element of the offense. There could be myriad reasons why. Did the state produce through witnesses any kind of testimony at trial that would support that, that there was a kidnapping independent from a rape? The kidnapping and the rape were often mentioned together in the state's closing argument and opening statements, but... I asked about evidence. Was there any evidence introduced that would support simply a charge of kidnapping and murder in connection with the kidnapping as opposed to tying it all to the rape? Oh, yes, Your Honor. Simply the proof that the defendant was the last one to see the victim alive, that she went outside, and ten minutes later she was gone and the defendant's car was seen leaving the area. That alone is showing that he kidnapped her and that he subsequently then murdered her to cover up the kidnapping. And again, when considering the weight of all of the aggravating factors, the sentencing case, the mitigation case that was actually presented, there is not a reasonable probability that but for trial counsel's failure to present additional evidence, the result of the proceeding would have been different. And for that reason, the petitioner cannot show that this claim is substantial under Martinez even if this court determines that it applies. And we would therefore ask the court to affirm the decision of the district court and find that Martinez does not apply, but go further if it decides it does apply and find that the claim is not substantial. If there are no further questions, respondent would rest on the remaining issues for his brief and would ask this court to affirm the denial of habeas relief. So, I mean, he clearly targeted her for something. And she ended up dead. And so, reasonably, I think you're probably right that the jury was going to convict him of kidnapping and murder. But moving on to mitigation, if you had evidence that really called into question this whole rape theory, if the jury heard, yeah, there were a few sperm heads, but it's actually negligible and there was this test done and it was negative and there's also studies that show that it can get on your underwear through the washing machine. And she lived with a brother who was probably masturbating all the time and you throw all that in and then you also have the evidence of brain damage. I mean, you don't think that there's a reasonable probability that a juror might have said, yeah, let's put him away for life? Respectfully, no, Your Honor. Again, based on the strength and the evidence of the petitioner's guilt, but to go to the first part of your question about the serological evidence, that was an issue that the state court addressed on the merits and concluded the trial counsel was not ineffective because there was still no prejudice. Not because rape. It was decided on the prejudice grounds. Yes, Your Honor. It was decided that it was deficient performance, right? Yes, Your Honor, it was. But the court concluded that there was no prejudice because there was still evidence of sperm heads. Yeah, there was sperm there and it was on the inside, but I think you have to look at the two deficiencies together. One is that it could have been from him, but the other is that this wasn't a simple matter of finding some sperm on the inside of her underwear. There was maybe the numbers were very noteworthy and the lack of the antigen was very noteworthy and, in fact, there were other ways to get there. I mean, there was just a whole lot of factors that makes it go from this is conclusive evidence that he raped her, why else would there be sperm there, and the presence of sperm means the presence of semen, and then all of that is sort of chipped away. You don't even have the association between the sperm and the semen and it becomes, you know, rather speculative about whether she really was raped. It's not entirely speculative because some of the other proof that you're referring to, like the Canadian washing machine study, that involved the use of an item containing sperm or semen that was washed with new items of clothing. There's no proof here that the victim was wearing a new pair of shorts or that Jeremy used the pair of shorts that the victim wore on the day she disappeared, or that those shorts were washed with a load of laundry containing the victim's shorts. The evidence is simply speculative, and the fact remains that the petitioner was the last person to see the victim. There was sperm found on the inside of her crotch and her shirt was turned inside out, and even this additional evidence does not render the proof of petitioner's guilt insufficient or make it to where the jury would have reached a different result, even if it had heard of this additional evidence and reweighed it. Which again, that goes to the strength of the aggravating factors as well, which this court considers when conducting a prejudice analysis. So, respondent would submit that even with all the new evidence that's been presented, there's not a reasonable probability that at least one juror would have voted for a different sentence. And for that reason, we would ask this court to affirm the denial of habeas relief. Thank you. Thank you. Your Honor, I would argue that the State DA recognized the importance of brain damage because in closing argument, he argued to the jury there's no evidence of brain damage here. And he did that in conjunction with denigrating the evidence that had been presented, calling it into question in terms of its credibility and belittling the strength of the testimony that was presented. That argument could have been thwarted had trial counsel acted effectively and followed the red flag. With respect to the evidence with the serological evidence and the evidence regarding the source of the sperm heads found on the victim's shorts, Your Honor, I would like to return and respond to some of my colleagues' arguments. Wait, I thought they were found on the inside crotch of her underwear, not just on her shorts. Your Honor, I may be mistaken, but my belief is that her underwear was not found, that the sperm heads were found on the crotch of her shorts. Inside crotch. Inside crotch of her shorts. Which begs a lot of questions because why is her shirt allegedly off but her shorts were on her? That doesn't make any sense, but that goes to how what happened with the resolution of the prejudice prong in state court was an unreasonable application of facts under D2. I'm sorry, you said why were her shorts on? I was under the impression that all they found were bones, not her body. What the state court found, Your Honor, which I find to be unreasonable, is that her shirt had been turned inside out suggesting it had been removed from her body. Yeah. If the sperm heads are indicative of seminal fluid and if they're on the inside crotch of her shorts, that requires an assumption that her shorts were in contact with her genitalia at some point after penetration and rape if a rape had occurred. And it justifies logic to me that you would have the child put her shorts back on and not put on her shirt. All of that is to say that the state court's decision in this matter was simply unreasonable. But what we do know is that the semen evidence was critical. The trial attorneys knew it, the prosecutor knew it, the evidence of rape was the linchpin of the state's case for that. And it does have everything to do with the way in which the jury weighed the mitigation evidence presented and the way in which the jury would weigh mitigation evidence presented now in light of the testimony that has been discovered both in her condition but also in federal habeas. And we need to remember that in the deposition of Jeremy Beard, he admitted that everything in his declaration was true, that he had used his sister's shorts to wipe off after masturbating. Did he say that? I want to make sure I'm clear on the record. I understood that he had said that he had picked up shorts and wiped himself off. Does he say that I picked up my sister's shorts and wiped myself off? I will be so honest. Okay, thank you. But not on that occasion, right? What he said was it could have been three or four days. That was the outside time frame on cross-examination deposition. It may have been three or four days before. But that gets us to this whole idea of the victim putting on quote-unquote clean shorts because in the deposition, Jeremy Beard describes his home. He describes piles of unwashed laundry. He describes a home that is filled with mice and roaches. Clean shorts, I would suggest a jury could have concluded, under all of the evidence, simply meant different shorts, not that they had been freshly laundered because Jeremy Beard clearly describes his mother's home keeping as not one who was keeping up with the laundry and her sister wasn't going in and getting a freshly folded pair of clothing out of her dresser. The jury could have concluded, based on Jeremy's testimony in his declaration and his deposition, as well as from the serological evidence from Megan Clement, Megan Clement testified that she would not be able to say that there was semen on the shorts based on all of the evidence, that the spermheads in and of themselves were not sufficient to a reasonable degree of scientific certainty to say that there had ever been seminal fluid on those shorts. Before your time is up, let me ask you if there is a case that you find close to your argument about the mitigation of organic brain damage. I find that a significant argument. Is there a case that you rely on to show that, to thread the needle and show that this is a new claim, that organic brain damage is a distinct claim from standard, not that it's not hard, but from standard proof of psychological damage resulting from a very difficult childhood? Vickens v. Ryan, Roppilla v. Beard, Sears v. Upton, Porter v. McCollum. The whole series, the whole series of new developing organic brain damage cases. Yes, we rely on all of those cases. Your Honor, I appreciate the extra time. If there are no further questions, we'll stand on our wreaths of respect. Just say the cases again. You rattled through them so fast. I want to make sure. Vickens v. Ryan is the ninth circuit case.  But also, I would rely on Roppilla, R-O-M-P-I-O-L v. Beard, Sears v. Upton, and Porter v. McCollum, M-C-C-O-L-L-U-N. Also, Williams v. Taylor. Thank you, Your Honor. Thank you very much, both of you. Thank you for your argument. The case will be submitted, and the clerk may adjourn court. The honorable court is now adjourned.